The next case today, number 231551, United States v. Ronald Andruchuk. Will counsel for the appellant please come up and introduce yourself on the record to begin. Good morning, Your Honors. Amy Barsky for Appellant Ronald Andruchuk. And if I could please reserve three minutes for rebuttal. You may. Thank you. Mr. Andruchuk signed a plea agreement in advance of the drafting of the PSR sentencing in this case. Three facets of that agreement are important in this appeal. First, that it did not specify what the base offense level, total offense level, or what the guideline sentencing range was, which is unusual in my experience. Second, that the government agreed to recommend the low end of the guideline sentencing range. And third, that a waiver of appeal applied if the sentence were outside the guideline range as determined by the court. That plea agreement left Mr. Andruchuk completely vulnerable to what indeed happened in this case, which was that probation miscalculated the guidelines. In fact, nearly doubling them from 37 to 46 months up to 63 to 78 months after he had signed a waiver. His counsel failed to notice the error. The probation department failed to notice that the single half of a sentence that it received from the agent about semi-automatic firearms was insufficient under the law. The government failed to read the commentary to the guideline. And the district court also failed to notice that everyone in the case had ignored the operative definition of a semi-automatic firearm. Counsel, one thing that I noticed when I read over the briefs and the record is, I believe your client specifically said that he had no objections to the PSR. And so my question for you is, since what you're raising is really a factual issue about whether there were magazines and the magazines could hold a certain amount of rounds close to the guns, isn't that something that your client would have been in the best position to know, really, whether they existed and whether the application note was met? So why shouldn't we look at his specific statement that he doesn't object to the PSR? He's admitting to the underlying facts. Because that happens in every single sentencing. People either object to a PSR or they don't. And when there's no objection, the district court will ask it. No, no, your client was in a superior position. He pled guilty to this crime. He knew he had several firearms. He knew that there were rounds of ammunition. And so why shouldn't we take it as, in essence, in the absence of an objection? Nobody's put on notice that the government needs to put on any more evidence here. It's correct that the government was not put on notice that it needed to put in more evidence. No, no, because your client, who had knowledge of the firearms at his place, conceded it. He did not have knowledge of the definition of a semi-automatic firearm, which required a firearm capable of carrying a large-capacity magazine and a magazine. But that definition was certainly available to his attorney at the time. I mean, the purpose of the government negotiates favorable plea deals with defendants in exchange for waivers of appeal is to avoid circumstances just like this, where the defendant will then, when he doesn't like the sentence, attempt to come back with, say, a guidelines challenge. That's all we have here. It seems to me that this appeal flies in the teeth of the whole body of waiver of appeal jurisprudence that's developed in our circuit. Well, it also flies in the face of teeter in the body of jurisprudence, providing that in exceptional circumstances, when justice requires, a waiver can be set aside. But what I'm suggesting to you is that these aren't exceptional circumstances. Every plea agreement, or virtually every plea agreement, that contains a waiver of appeal comes before the court sets the guideline sentencing range. And there is no injustice unless there is some proof in the record of which I'm not aware that this exception would apply. You point to the fact that, well, the plea agreement doesn't contain the proper definition. When you consider the number of guns and the quantity of ammunition and magazines in that residence, I'm not prepared to look at this record and say the exception doesn't apply. The most I could say is that perhaps in the absence of a specific finding, I could say I can't tell whether the exception applies. That's different than saying that the exception applies. Well, backing up a minute, you know, we are now in the position of arguing a negative, that he did not have a magazine. The government submitted a detailed list cataloging 221 items seized from the residence. They appended a dozen photographs to their pleadings. They are not able to point to a single magazine in the record. There's nothing more that a defendant could do to prove a negative other than to say, look, there is an absence of evidence to prove the affirmative. And I think it is also worth backing up and noting that it is clear that everyone in this case failed to read the commentary to the guideline. It is not a situation in which everyone was aware of the correct legal definition but failed to perceive that the facts were inadequate. Counsel, I looked at the exhibits that you referenced in terms of your point that there were no magazines. I think there is an entry on one of the exhibits, and it's line 220, and it says assorted firearm magazines and accessories. So there is a mention of magazines. We just don't know the capacity of the magazines. So I think this is what I asked you before but in a slightly different way. If we're sort of looking to see if there's an error at all that would qualify for overlooking the waiver, it's just not clear to me that there is an error because you're arguing that everybody ignored Application Note 2. But another way to look at it is that it was so obvious to everyone that Application Note 2 applied and your client didn't object that those facts were found to be true. So how can we tell which happened here? Well, I think in that instance, though, you're leaving a defendant without a functional lawyer at the whim of an incredibly complicated guideline system. And Romero from this court and Rosales Morelis from the Supreme Court make very clear that the guidelines are complicated, mistakes happen, and those mistakes are plain errors if they affect the sentencing guideline range. So what you're positing is conceivable, but it is unfair to leave a defendant whose counsel is utterly ineffective. And he was ineffective regardless of whether he could have gone back and cataloged the items that his client owned. We all know that failing to object to a huge enhancement that is completely factually unproven by the government falls below any standard of performance. And the other facet of this is that the plea agreement... Excuse me, we can't just assume the counsel was ineffective. That's something you've got to prove. And procedurally you can't prove that in this proceeding. We've made it very clear in our prior case law that where there's no record on ineffective assistance developed in the trial court, your remedy is through 2255. And you haven't attempted, as far as I know, to implement that remedy. I disagree with that. The cases say that if the ineffectiveness is plain on the record, which it is in this case, a plea agreement was signed. Counsel had no reason to fail to object to a doubling of his client's guideline. But that overlooks the possibility, what one might call the probability, that whatever definition the guidelines have for this enhancement has been satisfied here. Judge Reichelman pointed you to the point in the record where the language appears, which one could easily interpret as meaning that there are magazines here in sufficiently close proximity to firearms to warrant the enhancement. You say that that's factually wrong, and you have a right to attempt to prove that in a 2255 for ineffective assistance. You can't ask us to assume it. Well, but counsel in that would have been required to simply say, we object on the ground that the enhancement has not been proven. The PSR contains no information. And he has an obligation of good faith to the court, and he talked to your client. He was aware of the exhibits, and he may well have thought that this guideline was satisfied, and he could not, in good faith, assert such an objection. The record seems to favor that reading of it rather than your reading of it. Well, the government bore the burden to prove that the enhancement applied, so there's nothing bad faith about pointing out to the government. I'm sorry. Your client got a good deal, and he signed a plea waiver, and you're now asserting that needs to be undone on the basis of speculation, that the lawyer didn't know what he was doing, the lawyer who had talked to your client and understood the law? Your Honor, the PSR. Were to assume he didn't understand the law when the evidence tends to support that the guideline that you're saying he should have objected to, in fact, applied? I think the evidence absolutely supports that he did not understand the law, nor did the probation officer or the prosecutor. Thank you, counsel. You'll have your time for rebuttal. Thank you, counsel. Will attorney for Appley please come up and introduce yourself on the record to begin? May it please the Court, Lauren Zurier on behalf of the government. The evidence is in the record in this case. Had there been an objection, the prosecutor could have pointed out in the photographs which weapons had the magazines attached that would have fully satisfied the guideline. But because defense counsel didn't object to the final version of the PSR, even though he made detailed versions to the 2K1 series of guidelines in the draft PSR regarding the proximity of drugs, he completely accepted the final version of the PSR, which contained a statement from the case agent saying there were weapons capable of accepting high-capacity magazines. And there was no challenge to that. And furthermore, when you get to the sentencing hearing, not only does the defendant say we completely accept the PSR, he also says to the judge there are no factual issues in dispute. So on that basis, the prosecutor had no notice that he should have narrated what was in the very photographs that everybody could see, especially when that was taken in conjunction with the information in the PSR and the defendant's own representations. So this is a case, I would submit this is a case of classic waiver, a knowing waiver of a right that he knew he had. I would point out, I know my opposing counsel doesn't agree that the background of the defense attorney is relevant, but the defense attorney was a 20-year ex-military and made reference at the hearing to his own background in firearms. So I suggest that if there's any inference to be drawn from this record, it's that what this court posited before is what happened. The defendant looked at this record and realized he couldn't in good faith make an objection to the application of this particular guideline enhancement. Counsel, but the information in the PSR was provided before you knew there would be no objection. Why was there nothing factual about whether there's a magazine that qualified that was attached or in close proximity? I mean, the fact of the matter is there isn't anything factual in the PSR or the exhibit about the capacity of the magazines. It just says magazines, line 220, or where they were. Why wasn't that put into the PSR? I think that if you are assuming that the PSR contains only a legal conclusion, one could look at it this way. I think you could take it simply as a factual matter. There were weapons in this case that met the definition of the guideline for carrying high-capacity magazines, and I'll tell you there are ones with the magazine attached to them. But because there was no notice and everybody agreed, and everybody looked at the photographs, it's like saying nobody's going to point out on the record the sky is blue because everybody looks at it and everybody knows. So that's why Rule 32 and the entire system of objections and waivers and acceptance of the reliability of the PSR exists. Had there been any objection, the prosecutor could have made a proffer in two sentences and we wouldn't be standing here arguing about this, but he didn't. I would therefore suggest that the appeal should be dismissed because it was a fairly made and fairly agreed upon appeal waiver and there's no miscarriage of justice. I would also note that even if the court decides that this isn't a waiver case, even if the court goes to plain error, one component of plain error is an effect on substantial rights. And the case law is very clear that when the defendant has that burden on appeal, the defendant has to advert just something that the trial judge didn't look at or could be introduced to disprove what was in the record. In that sense, it's just like Rule 32 in this court's case law, including Arce Calderon, which says that if there's an objection, if there's a rhetorical objection to the PSR, the trial judge doesn't have to take account of it. But if there is an objection with some sort of countervailing proof, then the prosecutor has to provide more proof. Nothing of the sort happened here, and I would ask that the court dismiss the appeal and affirm the sentence. Thank you. Thank you, counsel. Will Attorney Mbarski please reintroduce herself on the record to begin? You have a three-minute rebuttal. Amy Barski for Mr. Andruchuk. Three points, briefly. This is not garden variety error, not only because of the magnitude of the error, but because the plea agreement, the benefit that it was to deliver to Mr. Andruchuk, was a government recommendation at the low end of the guideline. So under Santiago-Puergos, he is denied the benefit of the agreement when his counsel fails to object, the probation office fails to note, the court fails to note, the prosecutor fails to note, that there is not evidence in the record to support a huge enhancement. That's what makes this different from garden variety error that gets swept under the rug under the waiver cases. Secondly, Romero and the Supreme Court's decision in Rosales-Morales in 2018, to some degree, make clear that a guideline sentencing error, which changes the guidelines range, does substantially affect the rights of a defendant and is plain error. Now, the language of Teeter itself says that the Teeter exception encompasses situations in which the district court, quote, unquote, plainly errors. Counsel, even if we were to agree with you that we should go through the plain error analysis, I think we go back to was there an error here. And we're trying to figure out how it's clear, how it's plain that there was an error when your client, his attorney, said the facts are not in dispute, we do not object to the PSR. The PSR states that there were high-capacity magazines. And so in what sense is the court, the district court here, plainly errored by then applying the enhancement? I think that's what we're struggling with. So the PSR, the factual basis that we're talking about, is a sentence that says, quote, according to information provided by the case agent, several of the seized firearms could carry magazines which held 15 or more rounds, unquote. That is not sufficient to prove the enhancement. The language of the guideline comment says firearms that could carry high-capacity magazines and the existence of magazines either attached to or in proximity. So we are not... But why is it not sufficient when your client doesn't object to it and say that the facts aren't disputed? I think that's really the key issue. I mean, I can't change the fact that he didn't object. It is ineffective assistance of counsel to fail to object. So you go back to the ineffective argument? And I think it is also clear that his lawyer and the court and everyone else was not aware of the application note which required more than this factual basis. We are not disputing the factual assertion that there were firearms capable of carrying the magazines. We are disputing the existence of the actual magazines and the record is completely silent as to those. Where the defendant has to prove a negative, there isn't anything more that a defendant could do. Thank you, counsel. Thank you. Thank you, counsel. That concludes arguments in this case.